THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 08-00256-WS |
| | ) | (Civil Action No. 11-00715-WS-N) |
| BARRY JAY SULLIVAN, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This action is before the Court on Defendant/Petitioner Barry Jay Sullivan's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 193). This matter has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the petitioner's § 2255 motion, the United States' response in opposition thereto (doc. 196), petitioner's reply (doc. 200), and all other pertinent portions of the record, it is the recommendation of the undersigned that the § 2255 motion be **DENIED.**

I. BACKGROUND

A. Procedural History.

Barry Jay Sullivan ("Sullivan") was convicted by a jury on March 20, 2009, of conspiring to traffic 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 (Count One), and of possession with intent to distribute methamphetamine (Count Three) and cocaine (Count Four), in violation of 21 U.S.C. § 841(a)(1). (Doc. 110). He was sentenced on August 3, 2009, to serve concurrent terms of 300 months in prison on each count. (Doc. 142). The Eleventh

1

Circuit affirmed his conviction and sentence in an unpublished opinion and judgment entered on September 30, 2010. (Doc. 190).[1]

In his direct appeal, Sullivan argued that "the evidence was insufficient to support all of his convictions." (Doc. 190 at 5). Sullivan predicated his argument on the following contentions:

- The government's cooperating witnesses were motivated to provide testimony against him in order to receive more lenient sentences in their criminal cases.

- Several of the government's cooperating witnesses - including Ham Xaysana and Benjamin Adams - may have fabricated their testimony against him.

- The court erred by permitting a police officer, Jeffrey Stone, to provide his opinions regarding the significance of certain items - a gas torch, digital scales, crystal methamphetamine, and a piece of paper with the figure "1700" written on it - that were seized from the bedroom shared by Blackburn and Sullivan.

(*Id*. at 5-6). The Eleventh Circuit rejected each of Sullivan's contentions and specifically concluded that:

> Here, the jury heard testimony regarding the witnesses' plea agreements with the government, and the relevant plea agreements were entered into evidence. Moreover, the jury heard evidence regarding the timing and circumstances under which Xaysana and Adams provided information regarding Blackburn and Sullivan to police officers. In addition, the jury heard evidence that Merritt and Long could not identify Sullivan out of a photographic line-up. Accordingly, the jury was armed with all of the evidence emphasized by Sullivan on appeal when it made credibility determinations, and the jury's decision to credit the testimony of the cooperating government witnesses is not "unbelievable on its face." *See* [United States v. Garcia, 405 F.3d 1260, 1270 (11th Cir. 2005)]. Significantly, several witnesses testified that they had met with Blackburn and Sullivan on Ramsey Road. Xaysana and Oxner testified consistently with each other that Oxner had introduced Xaysana to Blackburn and Sullivan, and that Xaysana subsequently began to directly deal with Blackburn and Sullivan. In addition, many of the witnesses' testimony, that they had met with Blackburn and Sullivan to deal drugs, was corroborated by hotel records and telephone records. Several witnesses were able to identify both Blackburn and Sullivan from photographic

---

[1] The Eleventh Circuit opinion includes the appeal claims of co-defendant Tasha Blackburn. See, United States v. Blackburn, 398 Fed.Appx. 453 (11th Cir. 2010).

> line-ups.
>
> Based on the testimony described above, there was sufficient evidence for a reasonable jury to conclude that a conspiracy to buy and sell methamphetamine existed, and that Sullivan had joined in that conspiracy. *See* 21 U.S.C. §§ 841(a)(1) and 846; Garcia, 405 F.3d at 1269-70.

(*Id.* at 26-27). Eleventh Circuit also dedicated the last five pages of its opinion (*Id.* at 29-33) to rejecting Sullivan's claim concerning the scope of Officer Stone's testimony, namely that the court erred by permitting a police officer, Jeffrey Stone, "to provide his opinions regarding the significance of certain items - a gas torch, digital scales, crystal methamphetamine, and a piece of paper with the figure "1700" written on it - that were seized from the bedroom shared by Blackburn and Sullivan." (*Id.* at 6). Specifically, the Eleventh Circuit held that, although Stone's testimony was expert in nature,[2] "the [district] court did not abuse its discretion in denying Blackburn's and Sullivan's motions to strike [Stone's] testimony on the ground that it invaded the province of the jury, or amounted to improper speculation." (*Id*. at 32, *citing* United States v. Emmanuel, 565 F.3d 1324, 1335 (11th Cir.), *cert. denied*, 130 S.Ct. 1032 (2009).

The Eleventh Circuit's mandate issued on November 9, 2010. (Doc. 190 at 3). Sullivan did not seek further review by the Supreme Court. On December 12, 2011, he timely filed this *pro se* § 2255 motion. (Doc. 193). Sullivan seeks to have his conviction and sentence set aside, in sum, on grounds of ineffective assistance of trial and appellate counsel, both being Richard Shields. (*Id*.). Sullivan predicates the ineffectiveness claims, in sum, on the following contentions:

---

[2] The Eleventh Circuit declared that Officer Stone's challenged testimony was properly designated as "expert testimony" because the evidence in the record established that he "had received training in the methods by which methamphetamine is manufactured, and had investigated narcotics crimes for three years." (Doc. 190 at 31).

3

- Counsel was "wholly unprepared" for trial. (Doc. 193 at 4).

- Counsel "failed to properly preserve objections in the suppression hearing." (*Id.*)

- Counsel "failed to investigate defense claims raised by his client." (*Id.*)

- Counsel "failed to locate potential witnesses." (*Id.*)

- Counsel had no "defense plan in place." (*Id.*)

- Counsel failed to object that Officer Stone "was offering expert testimony without the required 'expertise.'" (*Id.*)

- Counsel "failed to file any pretrial motions." (*Id.*)

- Counsel failed to file "proper objections" to the PSR. (*Id.* at 4, 9).

- Counsel failed to "move for bifurcation of the joint trial." (*Id.* at 5, 9).

- Counsel "failed to investigate the plausible and believable defenses which were advanced by his client." (*Id.* at 7-8).

- Counsel failed "to present character witnesses at penalty phase." (*Id.* at 8).

- Counsel failed to "properly cross-examine relevant witness testimony. . ." (*Id.*)

- Counsel "offered no relevant objection to various items considered *Crawford* material. . ." (*Id.*)[3]

- Counsel "failed to effectively communicate to his client the multiple options available to him" through pleading guilty. (*Id.* at 8-9)

- Counsel failed to "raise proper objections to the presentence investigation report." (*Id.* at 9).

---

[3] Sullivan cites Chatom v. White, 858 F.2d 1479 (11th Cir. 1988). (Doc. 193 at 8). Sullivan does not explain what he means by "*Crawford* material" and the case he relies on makes no mention of such evidence. If Sullivan intended to invoke Crawford v. Washington, 541 U.S. 36, 38 (2004), and to contend that evidence was admitted at his trial in violation of "the Sixth Amendment's guarantee that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him'," he has failed to identify any such "item" or establish that it was admitted in violation of the confrontation clause.

- Counsel failed to file a motion for bifurcation from the co-defendant. (*Id.* at 9).
- Counsel failed to "Petition the United States Supreme Court for a writ of certiorari." (*Id.* at 4).

On January 3, 2012, the United States responded (doc. 196) in opposition to Sullivan's motion to vacate, set aside, or correct sentence. The government contends that this §2255 motion should be summarily denied or dismissed, in sum, because Sullivan's claims are "general categories of allegedly deficient performance [lacking] any detail, specifics, or factual or legal bases" and are, therefore, "wholly frivolous" (*Id*. at 5, 7).

In reply to the government's position, Sullivan argues, in sum, that he has "set forth a prima facie showing of ineffective assistance of counsel" because he affirmed his contentions "under the penalty of perjury." (Doc. 200 at 1). He further argues that "[a]bsent testimony of the counsel involved in this case, the Court lacks the ability to adjudicate this matter [because] there are material facts which are clearly in dispute." (*Id*. at 2). Sullivan also cites United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992) for the proposition that "when a movant presents a colorable Sixth Amendment claim showing disputed facts involving inconsistencies beyond the record, a hearing is mandated." (*Id*. at 5).

Despite Sullivan's contentions to the contrary, there is no need for an evidentiary hearing because his claims can be resolved based on the existing record. Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983)(" An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record."); *see also* Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)("[D]istrict court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous."); United States v. Mobley, 2013

WL 4166553, *22 (S.D. Ala., August 15, 2013)("There is no need for an evidentiary hearing [because] [o]n the existing record, Mobely has not presented non-conclusory facts that, if true, would entitle her to relief."). *See also*, San Martin v. McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011) ("'An evidentiary hearing may be necessary where the material facts are in dispute, but a petitioner is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics.'"), *quoting* Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006).

## II. STATEMENT OF THE LAW

A. Habeas Standard.

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a [] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also* Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of the collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Consequently, '[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 WL 3200694 at *3 (S.D. Ala. 2008).

B. Strickland v. Washington Standard.

A two-fold analysis must be applied to claims of ineffective assistance of counsel, as set forth by the Supreme Court and the Eleventh Circuit:

> To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of the test set out by the Supreme Court in Strickland v. Washington,

6

> 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The performance prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id*. at 687-89, 104 S.Ct. at 2064-65. The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense. *Id*. at 687, 104 S.Ct. at 2064.
>
> Unless a petitioner satisfies the showings required on both prongs, relief is due to be denied. *Id*. As a result, once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been. *Id*. at 697, 104 S.Ct. 2069 (A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."); Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong"). . . .
>
> To establish prejudice, a petitioner must show "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. [P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect of the outcome of the proceeding' is insufficient to show prejudice." Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (*quoting* Strickland, 466 U.S. at 693, 104 S.Ct. at 2067).

United States v. Butcher, 368 F.3d 1290, 1293-94 (11th Cir. 2004). The standard for analyzing ineffective assistance claims is the same for trial and appellate counsel. Maitre v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987).

In making the performance determination, conduct must be evaluated from the attorney's perspective at the time in order to avoid the distorting effects of hindsight. Strickland, 466 U.S. at 689; *see also* Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009)(" a court must avoid 'the distorting effects of hindsight' and must 'evaluate the conduct from counsel's perspective at the time'."). Given the petitioner's exacting burden, "the cases in which habeas

7

petitioners can properly prevail . . . are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*).

III.     ANALYSIS.

In order for Sullivan to establish ineffective assistance of counsel, he "must show that his attorney's performance was deficient and that the deficiency was prejudicial." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990). However, "[c]onclusory allegations of ineffective assistance are insufficient" Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), *quoting* United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991). Sullivan has neither shown that his counsel's performance was deficient nor shown that he was in any manner prejudiced by any alleged deficiency.

In not a single instance does Sullivan set forth any factual basis for his contention that counsel was ineffective. For example, although he contends that counsel failed to "preserve objections in the suppression hearing" (Doc. 193 at 4), he does not identify the objections he alleges were abandoned. Nor does Sullivan identify either the "potential witnesses" or the "alibi" witnesses he charges his counsel with failure to locate (*Id*. at 4-5). Although he contends that his counsel failed to investigate defenses "which were advanced by his client" (*id*. at 7), not one of these alleged defenses is either shown to be plausible or even described.

Sullivan also accuses his counsel of failing "to effectively communicate to his client the multiple options available to him" with respect to pleading guilty, but simultaneously asserts that "[c]ounsel continually encouraged Petitioner to enter a guilty plea." (Doc. 193 at 8). Sullivan does not contend that any plea agreement was ever proposed and does not explain what "options" he contends were available to him. He merely refers to a Third Circuit case in which, in sum, defendant's counsel failed to advise him that his guideline range if he went to trial would

be 78 to 97 months but could be reduced to 60 – 71 months if he entered an open guilty plea to both counts of the indictment, without cooperating with the government, because he would "have received a three-level reduction for acceptance of responsibility." Boothe, *supra*, 432 F.2d at 547. In Boothe, the Third Circuit concluded that an evidentiary hearing was required regarding counsel's alleged ineffective assistance because defendant had demonstrated that his 90 month sentence "arguably" exceeded by 19 to 30 months the sentence "he would have received had he entered an open plea to counts one and two" and thus that he was prejudiced by counsel's ineffective assistance. (*Id*.). Sullivan has, however, failed to demonstrate that any specific plea option was available to him, about which he was unaware, but which would have produced a lesser sentence.[4]

Sullivan further argues that his counsel "failed to raise proper objection to the presentence investigative report ["PSI Report"]" and failed to seek a bifurcation of his case from that of his co-defendant. (Doc. 193 at 9). He has, however, failed to specify in what manner his PSI Report was incorrect or to demonstrate just cause for bifurcation.

Sullivan also contends that "Counsel offered no relevant objection to various items considered *Crawford* material during the course of the trial and sentencing," but he fails to identify what "material" he is referring to or show the grounds on which it may be declared

---

[4] Cases out of the Third Circuit are not binding on this Court. Likewise, the Fifth Circuit case relied on by Sullivan, Beckham, *supra*, 432 F.3d at 267, is inapposite, because in that case the Court concluded that counsel's advice to withdraw a guilty plea that by agreement would result in a five-year sentence with no basis to assume that his client would still receive that five-year sentence if convicted at trial "falls outside the 'range of competence of attorneys in criminal cases'." (*Id*.). Unlike Beckham, Sullivan never entered a guilty plea and has failed to describe any advice given by his counsel that could be held to be improper.

objectionable.[5] Sullivan did raise an issue on appeal regarding Officer Stone's testimony, which was addressed by the Eleventh Circuit because the issue was clearly preserved by objection (*see* doc. 180 at 37, 38, 41, 42, 43, 48, 49, 50-54, 56-59, 66) during trial. The Eleventh Circuit held that, although Officer Stone's testimony was expert in nature, "the [district] court did not abuse its discretion in denying Blackburn's and Sullivan's motions to strike [Stone's] testimony on the ground that it invaded the province of the jury, or amounted to improper speculation." (Doc. 180 at 32). "Under the 'law of the case' doctrine, the 'findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal'." Heathcoat v. Potts, 905 F.2d 367, 370 (11th Cir. 1990), *quoting* Westbrook v. Zant, 743 F.2d 764, 768 (11th Cir. 1984)(*quoting* Dorsey v. Continental Casualty Co., 730 F.2d 675, 678 (11th Cir. 1984)). "The doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal." Schiavo ex rel. Schindler v. Shiavo, 403 F.3d 1289, 1291 (11th Cir. 2005). Even if Sullivan's counsel had failed to object to Officer Stone's testimony, an allegation not supported by the record, such conduct would not have constituted ineffective assistance of counsel. "[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance of counsel." Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994).

---

[5] Rather than describe the evidentiary "materials" he challenges as objectionable, Sullivan merely claims that an "Attorney's failure to object to the introduction of scientific evidence that resulted in defendant's conviction for first degree murder was ineffective assistance." Doc. 193 at 8, *citing* Chantom, *supra*, 858 F.2d at 1470. The test at issue in Chantom was an atomic absorption test (i.e. gun residue test), as to which the Eleventh Circuit held that the conditions under which the test's administration occurred were "questionable at best" and that this evidence was the most damaging to the defendant in this "circumstantial evidence" case. 858 F.2d at 1485-86. Upon review of the evidence presented in this case, the undersigned finds no test results similar to the one at issue in Chantom and no other evidence, which could be considered questionable, but lacking any objection raised at trial.

An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. The Eleventh Circuit has addressed the issue and held that:

> When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. ***This burden, which is petitioners' to bear, is and is supposed to be a heavy one***. And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately." See White v. Singletary, 972 F.2d 1218, 1221 (11th Cir. 1992). Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994) (emphasis added); *see also* Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*) ("And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."); McNeil v. United States, 2011 WL 3320510, *1, n.1 (S.D. Ala. August 2, 2011)(same). The standard is even higher where experienced counsel, such as Richard Shields[6], is involved. Jefferson v. Hall, 570 F.3d 1283, 1302 (11th Cir. 2009), *citing* Chandler, 218 F.3d at 1316 ("When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."). Sullivan has failed to show that his counsel's performance was constitutionally ineffective. Even if Sullivan had shown his counsel's performance to be constitutionally ineffective, he has neither alleged nor establishes

---

[6] Richard Shields, Esquire, was appointed by the Court to represent Sullivan. *See*, Doc. 8.

that he was prejudiced by any conduct of his counsel. Prejudice is established when there is a reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently. Strickland, 466 U.S. at 694; Boschen v. United States, 845 F.2d 921, 922 (11th Cir. 1988); Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir.1987).

In his third ground for habeas relief, Sullivan suggests that his counsel failed follow his directions to seek a writ of certiorari from the United States Supreme Court and to explain the reasons he did not do as instructed. (Doc. 193 at 4). As the government correctly argues, "*certiorari* review is discretionary, and there is no legal right to it." (Doc. 196 at 7, *citing* Sup. Ct. R. 10 ("Review on a writ of *certiorari* is not a matter of right, but of judicial discretion.")). Consequently, there is no right to effective assistance of counsel on discretionary review, because there is no right to counsel at that stage in the first place. *See, e.g.,* Wainwright v. Torrna, 455 U.S. 686, 587-88 (1982) (*per curium*) (where defendant had no constitutional right to counsel, he could not be deprived of effective assistance when counsel failed to file a timely petition for writ of *certiorari*). Even had the law permitted an ineffective assistance claim in this matter, Sullivan has neither alleged nor demonstrated that the writ would have issued but for his counsel's conduct.

<u>Petitioner is not entitled to a Certificate of Appealability</u>.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned further recommends that a certificate of appealability in this case be denied. 28 U.S.C. § 2255; Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of

appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "[A] COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, (2000); *see* Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further'."). Inasmuch as it is clear that Sullivan's claims for relief made pursuant to § 2255 are without merit, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that the petitioner should be allowed to proceed further. *See* Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

In the instant case, Petitioner's claims do not warrant the issuance of a Certificate of Appealability. Petitioner's claims are without merit. Therefore, no reasonable jurist could differ on the appropriate disposition of the petition on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability. Because Petitioner is not entitled to a Certificate of Appealability, any request for leave to appeal *in forma pauperis* is also due to be denied.

**CONCLUSION**

For the reasons set forth above, Sullivan has failed to establish that he was denied effective assistance of counsel at any juncture of the proceedings. It is, therefore, the recommendation of the undersigned that his § 2255 motion be **DENIED**. It is further recommended that any motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be **DENIED**.

**Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 26th day of February, 2013.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**